# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 12-33041 |
| MS MARK SHALE, LLC, | ) | Hon. Jacqueline P. Cox |
| | ) | Hearing Date:   August 23, 2012 |
| Debtor. | ) | Hearing Time:   9:30 a.m. |

## NOTICE OF EMERGENCY MOTION

TO:   See Attached Service List

**PLEASE TAKE NOTICE** that on **August 23, 2012 at 9:30 a.m.** or as soon thereafter as counsel may be heard, I shall appear before the **Honorable Jacqueline P. Cox,** Bankruptcy Judge, in Courtroom No. 680, U.S. Courthouse, 219 South Dearborn Street, Chicago, Illinois, or in her absence, before such other Judge who may be sitting in her place and stead and hearing bankruptcy motions, and shall then and there present the **Debtor's Emergency Motion For Authority To (1) Use Cash Collateral, And (2) Provide Adequate Protection, And For Related Relief,** a copy of which is attached and herewith served upon you, and shall pray for the entry of an order in conformity with the prayer of said pleading.

**AT WHICH TIME AND PLACE** you may appear if you so see fit.

> Steven B. Towbin (#2848546)
> Peter J. Roberts (#6239025)
> Shaw Gussis Fishman Glantz
>   Wolfson & Towbin LLC
> 321 North Clark Street, Suite 800
> Chicago, Illinois 60654
> (312) 541-0151  telephone
> (312) 980-3888  facsimile

## CERTIFICATE OF SERVICE

Steven B. Towbin certifies that he caused to be served a true copy of the above and foregoing notice and attached pleadings upon the attached Service List in the manner indicated, unless otherwise indicated, on this 21st day of August, 2012.

> /s/ Steven B. Towbin

# MS MARK SHALE, LLC
## SERVICE LIST

Kathryn Marie Gleason
Office of the U.S. Trustee
219 S. Dearborn St., Suite 873
Chicago, IL  60604

Jerry L. Switzer, Jr.
Polsinelli Shughart PC
161 N. Clark St., Ste. 4200
Chicago, IL 60601

900 North Michigan LLC
900 N Michigan Ave, #850
Chicago, IL 60611

ANSI
PO Box 4543
Carol Stream, IL 60197-4543

ARKADIN
PO Box 347261
Pittsburgh, PA 15251-4261

Arrow Messenger Service
1322 W Walton St.
Chicago, IL 60642

AT&T
PO Box 8100
Aurora, IL 60507-8100

AT&T Mobility
PO Box 6463
Carol Stream, IL 60197-6463

Ballin (Northern Comfort Group)
37 W 57th St., #1100
New York, NY 10017

Caryn Torres, General Mgr
Northbrook Court
2171 Northbrook Court
Northbrook, IL 60062

Chuck Fleming, General Mgr
Oakbrook Center
100 Oakbrook Center
Oak Brook, IL 60523

City of Chicago, Department of Law
Attn:  Esther Tryban Telser
30 N. LaSalle St., Rm 900
Chicago, IL 60602

Comonwealth Edison Company
Legal Revenue Recovery/Claims Dept
Three Lincoln Center
Oak Brook, IL 60181

Crain Communications Inc.
16309 Collections Center Dr.
Chicago, IL 60693

David J. Fischer
Edwards Wildman Palmer LLP
225 W Wacker Dr., Ste 3000
Chicago, IL 60606

DM Luxury
3280 Peachtree Rd. NW, Ste 2300
Atlanta, GA 30305

Fujitec America
1930 Paysphere Circle
Chicago, IL 60674

GGP Homart LLC II
4015 Paysphere Circle
Chicago, IL 60674

Gill & Gill
6243 Park Ave.
Morton Grove, IL 60053

Harold W. Sullivan
6133 N. Kilpatrick Ave.
Chicago, IL 60646

{10387-001 MOT A0325685.DOC 2}

Illinois Attorney General
Attn: Paul Gaynor
100 W. Randolph St.
Chicago, IL 60601

Illinois Department of Revenue
Bankruptcy Section, Level 7-425
100 W. Randolph St.
Chicago, IL 60601

Illinois Dept Of Employment Sec
Benefit Payment Control Div.
PO Box 4385
Chicago, IL 60680

Internal Revenue Service
Centralized Insolvency Operations
PO Box 21126
Philadelphia, PA 19114

Jack Victor Ltd.
1250 Rue St Alexandre
Montreal Quebec  H3b 3H6
CANADA

Jeffrey M. Wolf
Greenberg Traurig, LLP
One International Place
Boston, MA 02110

Jerry L. Switzer, Jr.
Polsinelli Shugart
161 N. Clark St., Ste 4200
Chicago, IL 60601

Job Investments LLC
1973 Johns Drive
Glenview, IL 60025

Job Investments, LLC
5215 Old Orchard Rd., Ste 630
Skokie, IL 60077

John Belmont
6243 Park Ave.
Morton Grove, IL 60053

Lamberto Losani
Villa Case Sparse 48/G
06063 Magione, Perugia
ITALY

Lisa Madigan
Illinois Attorney General
500 S. Second St.
Springfield, IL 62706

MS Finco, LLC
5215 Old Orchard Rd., Ste 630
Skokie, IL 60077

MS Mark Shale Holdings, LLC
10441 Beaudin Blvd.
Woodridge, IL 60517

Nancy A. Peterman
Greenberg Traurig, LLP
77 W. Wacker Dr., Ste 2500
Chicago, IL 60601

O'Brien International
Attn: David J. Moore
5215 Old Orchard Rd., Ste 630
Skokie, IL 60077

Oak Brook Shopping Center LLC
SDS-12-2892
PO Box 86
Minneapolis, MN 55486-2892

PAC Operating LTD Partner
PO Box 742339
Reference Customer #02001907
Los Angeles, CA 90074-2339

Penske Truck Leasing Co.
PO Box 802577
Chicago, IL 60280-2577

Rafael Klotz
Gordon Brothers Group
101 Huntington Ave., 10th Floor
Boston, MA 02199

Regency Lighting
Lockbox #16786
5505 B Cumberland Ave., Ste 307
Chicago, IL 60656-1471

Richard A. Myers
Mark Shale
10441 Beaudin Blvd., Ste 100
Woodridge, IL 60517

Robert Talbott Studios (Rosenthal)
PO Box 996
Carmel Valley, CA 93924

Scott Baskin
740 W. Hutchinson St.
Chicago, IL 60613

Skip Gambert
436 Ferry St.
Newark, NJ 07105

Staples
Dept DET
PO Box 83689
Chicago, IL 60696-3689

Swisher
PO Box 473526
Charlotte, NC 28247-3526

Trafalgar
24207 Network Pl.
Chicago, IL 60673-1242

Tribune Media Group
14891 Collections Center Dr.
Chicago, IL 60693-0148

United Health Care
22703 Network Place
Chicago, IL 60673

UPS
Lockbox 577
Carol Stream, IL 60132-0577

Village of Northbrook
1225 Cedar Lane
Northbrook, IL 60062

Village of Oak Brook
1200 Oak Brook Rd.
Oak Brook, IL 60523

West Town Refrigeration Corp
234 James St.
Bensenville, IL 60106

Zanella
711 Fifth Ave.
New York, NY 10022

**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 12-33041 |
| MS MARK SHALE, LLC, | ) | Hon. Jacqueline P. Cox |
| | ) | Hearing Date:   August 23, 2012 |
| Debtor. | ) | Hearing Time:   9:30 a.m. |

**DEBTOR'S EMERGENCY MOTION FOR AUTHORITY TO (1) USE CASH COLLATERAL AND (2) PROVIDE ADEQUATE PROTECTION, AND FOR RELATED RELIEF**

Pursuant to 11 U.S.C. §§ 361, 363(c)(2), 363(e), Fed. R. Bankr. P. 4001(b) and 4001(d), and Local Rule 4001-2, MS Mark Shale, LLC ("Debtor") hereby requests that this Court enter an order in the form attached hereto as Exhibit A ("Cash Collateral Order") authorizing the Debtor to (i) use cash collateral on an interim basis and after a final hearing ("Final Hearing") to the extent necessary to operate the Debtor's business as a going concern and thereby maintain and preserve the value of the Debtor's assets, and (ii) provide adequate protection to the Debtor's secured creditors, MS Finco, LLC ("Finco"), JOB Investments, LLC ("JOB"), Scott Baskin ("Baskin"), and Harold W. Sullivan ("Sullivan," and collectively with Finco, JOB and Baskin, the "Lenders"), on account of their prepetition liens and security interests, all of the foregoing in accordance with the Cash Collateral Order and the budget attached to the Cash Collateral Order as Exhibit 1 (as may be modified with the Lenders' consent, the "Budget"). In support of this Motion, the Debtor respectfully refers this Court to the Verified Declaration of Richard A. Myers ("Myers Declaration") filed contemporaneously herewith, and it also respectfully states as follows:

{10387-001 MOT A0325685.DOC 2}

### I. FED. R. BANKR. P. 4001(b)(B) and L.R. 4001-2 DISCLOSURES

1. The following disclosures are made pursuant to Fed. R. Bankr. P. 4001(b)(B):

    a. The only entities with an interest in the subject cash collateral are the Lenders.

    b. The Debtor requires the use of the Lenders' cash collateral in order to continue its business operations and to maintain and preserve the going concern value of its assets pending a capital raise or a sale. Accordingly, and pursuant to 11 U.S.C. § 363(c)(2), the Debtor requests authority to use cash collateral in accordance with the provisions of the Cash Collateral Order and Budget to pay ongoing expenses incurred in the ordinary course of its business and ongoing expenses associated with the maintenance and preservation of the Debtor's assets. These expenses include, without limitation, payroll, employee related expenses, maintenance costs, lease expenses, taxes, and insurance.

    c. The Debtor's authority to use cash collateral is subject to compliance with the Budget, which may be modified with the prior written consent of the Lenders. The duration of the approved cash collateral use will consequently coincide with the term of the Budget as so extended with the Lenders' consent.

    d. Pursuant to 11 U.S.C. §§ 361 and 363(e), the Debtor requests authority to grant certain adequate protection to the Lenders on account of their prepetition liens and security interests. As more specifically set forth in paragraph 3 of the Cash Collateral Order, the Lenders have conditioned their consent to the Debtor's use of cash collateral upon the entry of an order granting the Lenders valid and perfected liens on all of the Debtors' currently-owned or hereafter-acquired property and assets to the extent there is a diminution in the Lenders' prepetition collateral interests after the Petition Date (whether the reason for such diminution is as a result of, arises from, or is attributable to, the imposition of the automatic stay, the use of cash collateral or depreciation, sale, loss, or otherwise), subject to (i) any existing valid and perfected liens or security interests and (ii) any lien granted to the Agent in accordance with the Agency Agreement (as defined below), but specifically _excluding_ any causes of action under chapter 5 of the Bankruptcy Code.

2. The following disclosures of certain terms contained in the Cash Collateral Order are made pursuant to Local Bankruptcy Rule 4001-2(A)(2):

{10387-001 MOT A0325685.DOC 2}                 2

      a.    **Cross Collateralization Other Than As Adequate Protection:** No.

      b.    **Findings Regarding Validity, Perfection Or Amount Of Secured Creditor's Lien Or Debt And Waiver Of Claims Against Secured Creditor:** No.

      c.    **Waiver Of Rights Under Section 506(c):** No.

      d.    **Liens On Chapter 5 Causes Of Action:** No.

      e.    **Immediate Roll-Up Of Prepetition Debt Or Use Of Postpetition Loans To Pay Prepetition Debt (Other Than Under § 552(b)):** No.

      f.    **Different Treatment Of Professionals And Limit On Committee's Use Of Carve-Out:** No.

      g.    **Priming Of Secured Liens Without Consent:** No.

      h.    **Declaration Against Imposition Of Lender Liability:** No.

      i.    **Relief From The Automatic Stay On An Expedited Basis And/Or Without Further Order Of The Court:** No

3.    Pursuant to Local Rule 4001-2(A)(3), and to the extent not otherwise described herein, the following is a summary of other essential provisions of the Debtor's proposed use of cash collateral pursuant to the Cash Collateral Order:

### The Maximum Borrowing On An Interim And Final Basis

a.    This is not applicable to the Cash Collateral Order.

### The Interest Rate

b.    This is not applicable to the Cash Collateral Order.

### Maturity

c.    This is not applicable to the Cash Collateral Order.

### Events of Default

d.    This is not applicable to the Cash Collateral Order.

### Use of Funds Limitations

e.  Pursuant to paragraph 2 of the Cash Collateral Order, the Debtor is authorized to use cash collateral to fund expenses as set forth in the Budget. The Budget may be modified with the prior written consent of the Lenders.

### Borrowing Conditions

f.  The Debtor's use of cash collateral is conditioned upon the conferral of adequate protection liens pursuant to and as described in paragraph 3 of the Cash Collateral Order.

### The Budget

g.  The Budget is attached as Exhibit 1 to the proposed Cash Collateral Order. Pursuant to paragraph 2 of the Cash Collateral Order, the Budget may be modified with the prior written consent of the Lenders.

### §§ 363 and 364 Protections

h.  *See* ¶ 1(d) above.

### II.  FACTUAL BACKGROUND

**A.  The Debtor's Chapter 11 Case**

4.  On August 21, 2012 ("Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Since then, the Debtor has remained in possession of its assets and has continued to operate its business as a debtor in possession in accordance with 11 U.S.C. §§ 1107 and 1108. The Debtor has all of the rights and powers of a trustee in bankruptcy pursuant to 11 U.S.C. § 1107(a).

5.  This Court has jurisdiction to hear this matter and enter a final order granting the relief requested herein pursuant to 28 U.S.C. §§ 1334 and 157(b)(2) and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois.

**B.  The Debtor's Business**

6.  The Debtor is an Illinois limited liability company that commenced its business as of August 1, 2009. The Debtor operates three retail locations selling upscale men's and women's

clothing. The Debtor started operations after purchasing all of the operating assets from its predecessor pursuant to a chapter 11 sale order entered in Case No. 09-09825 in this judicial district. When the Debtor commenced operations, it also had internet sales, which have since been discontinued.

7. The Debtor's retail stores are located at 900 North Michigan Avenue, Chicago, Illinois; 1240 Northbrook Court, Northbrook, Illinois and 90 Oakbrook Centre, Oakbrook, Illinois. The Debtor also has a leased office and warehouse-distribution facility at 10441 Beaudin, Suite 100, Woodbridge, Illinois.

8. The Debtor is owned by an Illinois limited liability company known as MS Mark Shale Holdings, LLC ("Holdings"). Holdings is owned by Sullivan, JOB, and three members of the Baskin family. Consequently, the Lenders are insiders within the meaning of that term as defined by 11 U.S.C. § 101(31).

    C.    **Events Leading To Chapter 11**

9. The Debtor's financial difficulties stem from a significant decrease in sale of women's clothing starting in the fall of 2010. The decrease occurred as a result of a combination of factors, including a change in merchandising and marketing programs instituted by the Debtor's former president, a general decrease in the sale of tailored clothing and the general economic downturn that the nation and the Chicagoland area have experienced during the last several years.

10. Due to a severe cash shortage, the Debtor has been unable to take delivery of fall merchandise that is now on order. Despite its best efforts to attract new capital or locate a buyer, the Debtor has been unsuccessful, and its sales have been rapidly declining due to a lack of new

merchandise for the fall and winter seasons. In addition, the Debtor has lost several key employees as its sales have declined.

### D. The Debtor's Relationship With The Lenders

11. As stated above, the Lenders are insiders of the Debtor. Prior to the Petition Date, Holdings and the Debtor executed a series of promissory notes and loan agreements (collectively, the "Loan Agreements") with the Lenders in order to permit loan advances and other financial accommodations to or for the benefit of the Debtor. The Debtor pledged all or substantially all of its assets, including its cash, as security under the Loan Agreements.[1]

12. Except for a working capital revolving loan from JOB in the original principal amount of $1,000,000, the Debtor's obligations to the Lenders are on a non-recourse basis. As of the Petition Date, the outstanding aggregate amount owed under the Loan Agreements and secured by the Debtor's assets was approximately $4,100,000.

### E. The Debtor's Use Of The Lenders' Cash Collateral

13. Subject to the terms of a proposed Cash Collateral Order and the Budget attached thereto, the Debtor has negotiated the consensual use of the Lenders' cash collateral. As described in the Myers Declaration, the Debtor believes that it has a limited opportunity in the context of a chapter 11 case to attract new capital or market itself on a going concern basis. The Debtor intends to use the cash collateral to operate its business in the ordinary course as it attempts to raise fresh capital or sell its assets.

---

[1] Copies of the Loan Agreements are attached hereto as Group Exhibit B. Copies of the applicable UCC financing statements related to the Loan Agreements are attached hereto as Group Exhibit C.

14. Prior to the Petition Date, the Debtor solicited offers from three national liquidators to assist it to either raise new capital, locate a buyer or conduct store closing sales. The best financial offer was submitted by Gordon Brothers Retail Partners, LLC (the "Agent"). After further negotiations with these firms, the terms of an "Agency Agreement" were negotiated for several weeks prior to the commencement of this chapter 11 case. The Debtor believes that the Agency Agreement it has agreed to with the Agent will serve to maximize the value of its assets. The Debtor has or soon will be filing a motion to assume the Agency Agreement and shorten the time to do so. Among other terms, the Agency Agreement provides for the Debtor to grant the Agent a senior lien ("Agent Lien") upon certain of the Debtor's assets.

### III. REQUESTED AUTHORITY TO USE CASH COLLATERAL

15. By virtue of the Loan Agreements, the Lenders' claims against the Debtor are secured by first priority, non-avoidable, perfected, valid and enforceable liens on and security interests in all or substantially all of the Debtor's assets. Due to their liens and security interests, the Lenders consequently hold non-avoidable, perfected, valid and enforceable security interests in the Debtor's "cash collateral" as that term is defined within the meaning of 11 U.S.C. § 363(a).

16. The Debtor requires the use of the Lenders' cash collateral in order to continue its business operations and to maintain and preserve the going concern value of its assets pending a capital raise or sale. Accordingly, and pursuant to 11 U.S.C. § 363(c)(2), the Debtor requests authority to use cash collateral in accordance with the provisions of the Cash Collateral Order and Budget to pay ongoing expenses incurred in the ordinary course of its business and ongoing expenses associated with the maintenance and preservation of the Debtor's assets. These

expenses include, without limitation, payroll, employee related expenses, maintenance costs, lease expenses, taxes, and insurance.

17.     Provided that the Debtor (i) complies with the provisions of the Cash Collateral Order and Budget, and (ii) provides the adequate protection contemplated therein (and as discussed in greater detail below), the Lenders have consented to the Debtor's use of their cash collateral for expenditures in accordance with the Budget. The Debtor has agreed, subject to this Court's approval, to the Lenders' conditions for the use of cash collateral.

18.     The Lenders have conditioned their consent to the Debtor's use of cash collateral upon the entry of an order (i) granting the Lenders valid and perfected liens on all of the Debtor's currently-owned or hereafter-acquired property and assets to the extent there is a diminution in the Lenders' prepetition collateral interests after the Petition Date (whether the reason for such diminution is as a result of, arises from, or is attributable to, the imposition of the automatic stay, the use of cash collateral or depreciation, sale, loss, or otherwise), subject to the Agent Lien and any existing valid and perfected liens or security interests and specifically <u>excluding</u> any causes of action under chapter 5 of the Bankruptcy Code, and (ii) related relief. The fulfillment of these and other material conditions to the Lenders' consent to the Debtor's use of cash collateral are reflected in the proposed Cash Collateral Order.[2]

19.     These conditions as well as the other provisions of the Cash Collateral Order are the result of good faith, arms length negotiations between the Debtor and the Lenders. Accordingly, the Debtor believes that (i) the terms and provisions of the Cash Collateral Order

---

[2] The foregoing summary of the Lenders' conditions to the Debtor's cash collateral use is qualified by the more specific provisions contained in paragraphs 2-3 of the Cash Collateral Order.

are fair and reasonable under the circumstances and reflect the most favorable terms upon which the Debtor could obtain the necessary use of cash collateral, and (ii) the Lenders are entitled to the protections afforded under §§ 361 and 363(e).

20. Without the ability to use cash collateral to pay for expenses associated with the Debtor's postpetition operations and the maintenance and preservation of its assets pending the Final Hearing, the going concern value of those assets is certain to deteriorate. Consequently, the Debtor requests interim authority to use cash collateral according to the Budget. Such interim use is necessary to avoid immediate and irreparable harm to the value of the Debtor's assets and its estate pending the Final Hearing.

## IV.  ADEQUATE PROTECTION

21. Pursuant to 11 U.S.C. §§ 361 and 363(e), the Debtor requests authority to grant certain adequate protection to the Lenders on account of their prepetition liens and security interests. As more specifically set forth in paragraph 3 of the Cash Collateral Order, the Lenders' consent to the use of its prepetition collateral is conditioned on the conferral of replacement liens and additional liens and security interests on all existing and hereafter acquired assets of the Debtor (excluding chapter 5 causes of action), which adequate protection liens will be subject to the Agent Lien and any other valid, enforceable and unavoidable existing liens on the Debtor's assets.

22. The adequate protection liens granted to the Lenders will secure payment of their prepetition secured claims in an amount equal to the aggregate diminution, from and after the Petition Date, of the value of the Lenders' interest in prepetition collateral as a consequence of the Debtor's use or otherwise. By virtue of 11 U.S.C. § 507(b), the Lenders will also be

accorded superpriority administrative expense status to the extent that the Debtor's adequate protection is insufficient.

## V. NOTICE

23. The Debtor has served this Motion and notice of the preliminary hearing on this Motion by overnight delivery on the Office of the United States Trustee, counsel for the Lenders, and all of the Debtor's known creditors. The Debtor intends to provide notice of the final hearing on this Motion and the terms of the proposed Cash Collateral Order in accordance with the requirements of Fed. R. Bankr. P. 4001 and 9014 and as this Court may otherwise direct.

## VI. EMERGENCY DESIGNATION

24. As a result of the Debtor's immediate and ongoing need for funding to operate its business, any delay in hearing this Motion will cause serious and irreparable harm to the Debtor and the going concern value of its assets. Therefore, the Debtor's request for an emergency hearing with respect to the interim relief in this Motion is necessary and appropriate under the circumstances.

## VII. CONCLUSION

WHEREFORE, pursuant to 11 U.S.C. §§ 361, 363(c)(2), 363(e), Fed. R. Bankr. P. 4001(b) and 4001(d), and Local Rule 4001-2, the Debtor requests the entry of interim and final orders approving this Motion, and specifically: (i) authorizing the Debtor to use the Lenders' cash collateral on an interim basis in accordance with the terms of the Cash Collateral Order pending a final hearing on this Motion; (ii) authorizing the Debtor to use the Lenders' cash collateral on a final basis on substantially the same terms as the Cash Collateral Order; (iii) scheduling a final hearing on this Motion fourteen days after the entry of the interim order on this Motion or on such later date as the court's calendar permits; (iv) authorizing the Debtor to

provide adequate protection in favor of the Lenders in the manner and to the extent described herein; and (v) granting such other and further relief as is just and to which the Debtor may be entitled under the circumstances.

           Respectfully submitted,

           MS MARK SHALE, LLC

Dated:  August 21, 2012            By:  /s/ Steven B. Towbin
                                                         One of its attorneys

Steven B. Towbin (#2848546)
Peter J. Roberts (#2848546)
Shaw Gussis Fishman Glantz
  Wolfson & Towbin LLC
321 North Clark Street, Suite 800
Chicago, Illinois 60654
(312) 541-0151  telephone
(312) 980-3888  facsimile
stowbin@shawgussis.com
proberts@shawgussis.com

## **CERTIFICATION CONCERNING EMERGENCY HEARING**

I hereby certify, as a member of the Bar of this Court, that I have carefully examined this matter and that there is a true necessity for an emergency matter. I certify further that the necessity for this emergency hearing has not been caused by any lack of due diligence or intentional action or failure to act on my part or by my client, but has been brought about only by the circumstances of this case.

The reason this must be heard as an emergency matter is that, as a result of the Debtor's immediate and ongoing need for funding to operate its business, any delay in hearing this Motion will cause serious and irreparable harm to the Debtor and the going concern value of its assets. Therefore, the Debtor's request for an emergency hearing with respect to the interim relief in this Motion is necessary and appropriate under the circumstances.

                                                    Respectfully submitted,

                                                    MS MARK SHALE, LLC

Dated: August 21, 2012                        By:   /s/ Steven B. Towbin
                                                        One of its attorneys

Steven B. Towbin (#2848546)
Peter J. Roberts (#2848546)
Shaw Gussis Fishman Glantz
  Wolfson & Towbin LLC
321 North Clark Street, Suite 800
Chicago, Illinois 60654
(312) 541-0151  telephone
(312) 980-3888  facsimile
stowbin@shawgussis.com
proberts@shawgussis.com