**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MS MARK SHALE, LLC, | ) | Case No. 12-33041 |
| | ) | |
| Debtor. | ) | Hon. Jacqueline P. Cox |

**FINAL AGREED ORDER AUTHORIZING USE OF CASH COLLATERAL**
**AND GRANTING ADEQUATE PROTECTION**

Upon final consideration of the motion (the "Motion") of MS Mark Shale, LLC (the "Debtor") requesting this Court's authorization to use the cash collateral of MS Finco, LLC, JOB Investments, LLC, Scott Baskin, and Harold W. Sullivan (collectively, the "Lenders") pursuant to 11 U.S.C. § 363(c)(2) and Fed. R. Bankr. P. 4001; due and proper notice of the Motion having been given to all parties entitled thereto; the Debtor and the Lenders having agreed to the Debtor's use of the Lenders' cash collateral on a final basis pursuant to the budget attached hereto as Exhibit A ("Budget"); a preliminary and final hearing having been held on the Motion pursuant to the provisions of Fed. R. Bankr. P. 4001(c)(2); sufficient cause appearing therefor; it is hereby ORDERED:

1.     The Motion is hereby granted on a final basis subject to the terms and conditions set forth in this Order.

2.     The Debtor is authorized to use the Lenders' cash collateral in accordance with the Budget to pay actual, ordinary, and necessary expenses of the Debtor's business, as well as any other expenses approved by this Court. Any payments to be made to the Lenders as provided for in the Budget shall be provisional until the earlier of either (x) the Lenders' secured claims becoming allowed claims and (y) the sixty (60) day time period described in paragraph 11

below expiring without an objection or other challenge to the Lenders' secured claims or asserted liens being filed. The sixty (60) day Challenge Period (as defined below) will not apply to a chapter 7 trustee. The Budget may be modified with the prior written consent of the Lenders.

3. As adequate protection for any use or diminution in the value of the Lenders' interest in the Debtors' prepetition assets ("Prepetition Collateral"), including the cash collateral subject to the Motion, the Lenders are hereby granted, retroactive to the Debtor's petition date ("Petition Date") and without the necessity of any additional documentation or filings, valid, enforceable, non-avoidable, and fully perfected liens of the highest available priority upon (i) any property that the Debtor acquires after the Petition Date including, without limitation, any accounts receivable generated by the Debtor's postpetition operations, but excluding any avoidance actions under chapter 5 of the Bankruptcy Code, and (ii) any proceeds generated from such property. The liens granted in this paragraph ("Adequate Protection Liens") shall be (i) limited to the extent of the aggregate diminution subsequent to the Petition Date in the value of the Lenders' interest in the Prepetition Collateral (including the cash collateral subject to the Motion), whether by depreciation, use, sale, loss, or otherwise, and (ii) subject only to prior perfected and unavoidable liens in property of the Debtor's estate as of the Petition Date. The grant of adequate protection provided herein is without prejudice to the Lenders' right to seek additional adequate protection of their interests in the Debtor's property.

4. The Adequate Protection Liens granted to the Lenders will secure payment of their prepetition secured claims in an amount equal to the aggregate diminution, from and after the Petition Date, of the value of the Lenders' interest in prepetition collateral as a consequence of the Debtor's use or otherwise. By virtue of 11 U.S.C. § 507(b), the Lenders will also be

accorded superpriority administrative expense status to the extent that the Debtor's adequate protection is insufficient.

5. This Order shall be sufficient and conclusive evidence of the validity, enforceability and perfection of the Adequate Protection Liens, whether or not the Lenders elect to file or record financing statements, any other documents, or to take such other steps as may otherwise be required to obtain, evidence or perfect such liens under applicable law; and the Lenders may, in their sole discretion, but shall not be required to, file a certified copy of this Order in any filing or recording office in any jurisdiction in which the Debtor has real or personal property, and such filing or recording shall be accepted and shall constitute further evidence of perfection of their liens and security interests.

6. The entry of this Order is without prejudice to the Debtor's right to seek authority to use additional cash collateral if the Debtor determines that the cash collateral use authorized by this Order is insufficient.

7. Unless Lenders otherwise agree in writing, the Debtor's right to use cash collateral pursuant to this Order shall terminate on the earlier of the following dates (the "Termination Date"):

(a) the date an order is entered by the Court granting a motion to convert the Debtor's chapter 11 case to a case under chapter 7 of the Bankruptcy Code;

(b) the date an order is entered by the Court appointing or authorizing the appointment of a chapter 11 trustee or an examiner with expanded powers for the Debtor's estate;

(c) the date an order is entered by the Court granting one or more of the Lenders, or any other creditor, relief from the automatic stay in order to initiate or continue foreclosure, seizure, repossession, or other proceeding against any or all of the Prepetition Collateral;

(d) the date an order is entered by the Court granting a motion to dismiss the Debtor's bankruptcy case;

(e) the date on which this Order is reversed, revoked, modified, amended, stayed, rescinded, or supplemented;

(f) the date on which the Debtor, or any representative of the Debtor or its estate, shall grant any security interest in or lien on the assets or property of the Debtor or its estate senior to the Lenders' liens on the assets and property of the Debtor;

(g) subject to and after the close of the Challenge Period (as defined herein), the date on which the Debtor or any other any party in interest files any objection in the Debtor's bankruptcy case to the validity, amount, allocability, unavoidability, perfection, or priority of one or more of the Lenders' liens;

(h) the date on which the Court confirms a plan of reorganization that impairs (as defined in section 1124 of the Bankruptcy Code) one or more of the Lenders' rights under their applicable loan documents evidencing, securing or otherwise relating to the loans made by the Lenders;

(i) the date upon which the Debtor and the Lenders agree in writing to such termination; and

(j) the date five (5) business days after receipt of notice from Lenders by the Debtor, the U.S. Trustee, any committee appointed in the Debtor's bankruptcy case, or any other representative of the Debtor's estate, of Lenders' intent to terminate their consent to use of cash collateral pursuant to this Order on account of the occurrence of any Event of Default (as defined herein), unless such Event of Default is expressly and specifically waived in writing by Lenders or has been cured prior to the expiration of such five (5) business day notice period. In the event of any disagreement or dispute between the Debtor and Lenders as to whether an Event of Default has occurred hereunder, the Debtor may seek authority on an expedited basis to continue to use the cash collateral on the terms provided in this Order until such time as the Court resolves such disagreement or dispute.

8. Upon the Termination Date, the Lenders object to any subsequent use of the cash collateral, and the Debtor's authorization to use the cash collateral for any purpose is terminated. Upon the Termination Date, the Debtor shall immediately account for and, subject to further order of the Court, turn over to the Lenders all the cash collateral then possessed or thereafter acquired by the Debtor.

9. An Event of Default shall be deemed to have occurred under this Order, upon one or more of the Lenders providing written notice of the occurrence of one or more of the following events:

(a) The Debtor fails to perform in accordance with any of the terms and conditions of this Order, unless such failure to perform is cured no later than five (5) business days after receipt of such written notice; and

(b) The Debtor makes a payment of any amount not contemplated by the Budget or this Order, without prior consent of the Lenders or approval by the Court, unless such

payment is reversed or voided no later than five (5) business days after receipt of such written notice.

10. The provisions of this Order shall inure to the benefit of, and shall be binding upon, the Debtor and the Lenders and their respective successors and assigns, including, but not limited to, any trustee or representative now or hereafter appointed as a legal representative of Debtor, or its estate, in the Debtor's bankruptcy case, and shall be binding on all creditors and other parties in interest that received notice of the Motion.

11. No later than sixty (60) days from the entry of this Order (the "Challenge Period"), which shall apply to all persons and entities other than a chapter 7 trustee, (i) the Debtor and/or (ii) any other party in interest that seeks and obtains entry of an order of the Court, after notice and a hearing, granting such party leave to do so, by means of an adversary proceeding, object to, challenge, or seek to avoid the amount, validity, or enforceability of the Lenders' loan documents, the Lenders' loans, and/or the Lenders' security interests in or liens on the Prepetition Collateral. If no such action, objection or other challenge is commenced through an adversary proceeding by the Debtor or such other party in interest within the Challenge Period, then the pre-petition indebtedness owing to the Lenders under their respective loan documents will be deemed and adjudicated by this Order finally and indefeasibly as valid and enforceable, and the liens and security interests of the Lenders in the Prepetition Collateral will be deemed and adjudicated finally as valid, enforceable, unavoidable, and perfected. By agreeing to the terms of this Order, the Lenders do not, except as provided in this Order, waive any of their rights and remedies under their respective loan documents or applicable law, including those rights set forth in the Bankruptcy Code.

12. Nothing in this Order will be deemed or construed as an admission or waiver by the Lenders as to adequate protection, or any other issue in the Debtor's bankruptcy case, and this Order will not constitute consent by the Lenders to the use of the cash collateral other than for the limited purpose and during the limited period expressly provided herein. In addition, nothing contained in this Order will prejudice the rights of the Lenders to: (i) withdraw their consent to the Debtor's use of cash collateral and seek to obtain the Court's order prohibiting use of cash collateral after the Termination Date; (ii) seek relief from the automatic stay of section 362(a) of the Bankruptcy Code; (iii) oppose the sale or disposition of any asset pursuant to section 363 of the Bankruptcy Code; (iv) oppose confirmation of any plan of reorganization filed by the Debtor or any other party in interest; (v) seek a dismissal of the Debtor's bankruptcy case pursuant to section 1112 of the Bankruptcy Code; (vi) seek allowance of additional adequate protection in connection with the use of the Lenders' cash collateral; (vii) seek to convert the Debtor's bankruptcy case to a case under chapter 7 of the Bankruptcy Code pursuant to section 1112 of the Bankruptcy Code; (viii) seek the appointment of a chapter 11 trustee pursuant to section 1104 of the Bankruptcy Code; or (ix) seek any other relief that the Lenders may deem necessary and appropriate under the circumstances.

Dated: September ___, 2012               **ENTER:**

_____
United States Bankruptcy Judge

**AGREED TO:**

{10387-001 ORD A0326542.DOC 4}               7

| **MS MARK SHALE, LLC** | **MS FINCO, LLC, JOB INVESTMENTS, LLC, SCOTT BASKIN, AND HAROLD W. SULLIVAN** |
|---|---|
| By: _____<br>    One of its attorneys | By: _____<br>    One of their attorneys |
| Steven B. Towbin (#2848546)<br>Peter J. Roberts (#2848546)<br>Shaw Gussis Fishman Glantz<br>  Wolfson & Towbin LLC<br>321 North Clark Street, Suite 800<br>Chicago, Illinois 60654<br>(312) 541-0151  telephone<br>(312) 980-3888  facsimile<br>stowbin@shawgussis.com<br>proberts@shawgussis.com | Jerry L. Switzer, Jr. (#6210229)<br>POLSINELLI SHUGHART PC<br>161 N. Clark St., Ste. 4200<br>Chicago, Illinois 60601<br>(312) 819-1900 telephone<br>(312) 819-1910 facsimile<br>jswitzer@polsinelli.com |

**UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MS MARK SHALE, LLC, | ) | Case No. 12-33041 |
| | ) | |
| Debtor. | ) | Hon. Jacqueline P. Cox |

**FINAL AGREED ORDER AUTHORIZING USE OF CASH COLLATERAL
AND GRANTING ADEQUATE PROTECTION**

Upon final consideration of the motion (the "Motion") of MS Mark Shale, LLC (the "Debtor") requesting this Court's authorization to use the cash collateral of MS Finco, LLC, JOB Investments, LLC, Scott Baskin, and Harold W. Sullivan (collectively, the "Lenders") pursuant to 11 U.S.C. § 363(c)(2) and Fed. R. Bankr. P. 4001; due and proper notice of the Motion having been given to all parties entitled thereto; the Debtor and the Lenders having agreed to the Debtor's use of the Lenders' cash collateral on a final basis pursuant to the budget attached hereto as Exhibit A ("Budget"); a preliminary and final hearing having been held on the Motion pursuant to the provisions of Fed. R. Bankr. P. 4001(c)(2); sufficient cause appearing therefor; it is hereby ORDERED:

1.  The Motion is hereby granted on a final basis subject to the terms and conditions set forth in this Order.

2.  The Debtor is authorized to use the Lenders' cash collateral in accordance with the Budget to pay actual, ordinary, and necessary expenses of the Debtor's business, as well as any other expenses approved by this Court. Any payments to be made to the Lenders as provided for in the Budget shall be provisional until the earlier of either (x) the Lenders' secured claims becoming allowed claims and (y) the sixty (60) day time period described in paragraph 11

below expiring without an objection or other challenge to the Lenders' secured claims or asserted liens being filed.  The sixty (60) day Challenge Period (as defined below) will not apply to a chapter 7 trustee.  The Budget may be modified with the prior written consent of the Lenders.

   3. As adequate protection for any use or diminution in the value of the Lenders' interest in the Debtors' prepetition assets ("Prepetition Collateral"), including the cash collateral subject to the Motion, the Lenders are hereby granted, retroactive to the Debtor's petition date ("Petition Date") and without the necessity of any additional documentation or filings, valid, enforceable, non-avoidable, and fully perfected liens of the highest available priority upon (i) any property that the Debtor acquires after the Petition Date including, without limitation, any accounts receivable generated by the Debtor's postpetition operations, but excluding any avoidance actions under chapter 5 of the Bankruptcy Code, and (ii) any proceeds generated from such property.  The liens granted in this paragraph ("Adequate Protection Liens") shall be (i) limited to the extent of the aggregate diminution subsequent to the Petition Date in the value of the Lenders' interest in the Prepetition Collateral (including the cash collateral subject to the Motion), whether by depreciation, use, sale, loss, or otherwise, and (ii) subject only to prior perfected and unavoidable liens in property of the Debtor's estate as of the Petition Date.  The grant of adequate protection provided herein is without prejudice to the Lenders' right to seek additional adequate protection of their interests in the Debtor's property.

   4. The Adequate Protection Liens granted to the Lenders will secure payment of their prepetition secured claims in an amount equal to the aggregate diminution, from and after the Petition Date, of the value of the Lenders' interest in prepetition collateral as a consequence of the Debtor's use or otherwise.  By virtue of 11 U.S.C. § 507(b), the Lenders will also be

accorded superpriority administrative expense status to the extent that the Debtor's adequate protection is insufficient.

5. This Order shall be sufficient and conclusive evidence of the validity, enforceability and perfection of the Adequate Protection Liens, whether or not the Lenders elect to file or record financing statements, any other documents, or to take such other steps as may otherwise be required to obtain, evidence or perfect such liens under applicable law; and the Lenders may, in their sole discretion, but shall not be required to, file a certified copy of this Order in any filing or recording office in any jurisdiction in which the Debtor has real or personal property, and such filing or recording shall be accepted and shall constitute further evidence of perfection of their liens and security interests.

6. The entry of this Order is without prejudice to the Debtor's right to seek authority to use additional cash collateral if the Debtor determines that the cash collateral use authorized by this Order is insufficient.

7. Unless Lenders otherwise agree in writing, the Debtor's right to use cash collateral pursuant to this Order shall terminate on the earlier of the following dates (the "Termination Date"):

(a) the date an order is entered by the Court granting a motion to convert the Debtor's chapter 11 case to a case under chapter 7 of the Bankruptcy Code;

(b) the date an order is entered by the Court appointing or authorizing the appointment of a chapter 11 trustee or an examiner with expanded powers for the Debtor's estate;

(c) the date an order is entered by the Court granting one or more of the Lenders, or any other creditor, relief from the automatic stay in order to initiate or continue foreclosure, seizure, repossession, or other proceeding against any or all of the Prepetition Collateral;

(d) the date an order is entered by the Court granting a motion to dismiss the Debtor's bankruptcy case;

(e) the date on which this Order is reversed, revoked, modified, amended, stayed, rescinded, or supplemented;

(f) the date on which the Debtor, or any representative of the Debtor or its estate, shall grant any security interest in or lien on the assets or property of the Debtor or its estate senior to the Lenders' liens on the assets and property of the Debtor;

(g) subject to and after the close of the Challenge Period (as defined herein), the date on which the Debtor or any other any party in interest files any objection in the Debtor's bankruptcy case to the validity, amount, allocability, unavoidability, perfection, or priority of one or more of the Lenders' liens;

(h) the date on which the Court confirms a plan of reorganization that impairs (as defined in section 1124 of the Bankruptcy Code) one or more of the Lenders' rights under their applicable loan documents evidencing, securing or otherwise relating to the loans made by the Lenders;

(i) the date upon which the Debtor and the Lenders agree in writing to such termination; and

(j) the date five (5) business days after receipt of notice from Lenders by the Debtor, the U.S. Trustee, any committee appointed in the Debtor's bankruptcy case, or any other representative of the Debtor's estate, of Lenders' intent to terminate their consent to use of cash collateral pursuant to this Order on account of the occurrence of any Event of Default (as defined herein), unless such Event of Default is expressly and specifically waived in writing by Lenders or has been cured prior to the expiration of such five (5) business day notice period. In the event of any disagreement or dispute between the Debtor and Lenders as to whether an Event of Default has occurred hereunder, the Debtor may seek authority on an expedited basis to continue to use the cash collateral on the terms provided in this Order until such time as the Court resolves such disagreement or dispute.

8. Upon the Termination Date, the Lenders object to any subsequent use of the cash collateral, and the Debtor's authorization to use the cash collateral for any purpose is terminated. Upon the Termination Date, the Debtor shall immediately account for and, subject to further order of the Court, turn over to the Lenders all the cash collateral then possessed or thereafter acquired by the Debtor.

9. An Event of Default shall be deemed to have occurred under this Order, upon one or more of the Lenders providing written notice of the occurrence of one or more of the following events:

(a) The Debtor fails to perform in accordance with any of the terms and conditions of this Order, unless such failure to perform is cured no later than five (5) business days after receipt of such written notice; and

(b) The Debtor makes a payment of any amount not contemplated by the Budget or this Order, without prior consent of the Lenders or approval by the Court, unless such

payment is reversed or voided no later than five (5) business days after receipt of such written notice.

10. The provisions of this Order shall inure to the benefit of, and shall be binding upon, the Debtor and the Lenders and their respective successors and assigns, including, but not limited to, any trustee or representative now or hereafter appointed as a legal representative of Debtor, or its estate, in the Debtor's bankruptcy case, and shall be binding on all creditors and other parties in interest that received notice of the Motion.

11. No later than sixty (60) days from the entry of this Order (the "Challenge Period"), which shall apply to all persons and entities other than a chapter 7 trustee, (i) the Debtor and/or (ii) any other party in interest that seeks and obtains entry of an order of the Court, after notice and a hearing, granting such party leave to do so, by means of an adversary proceeding, object to, challenge, or seek to avoid the amount, validity, or enforceability of the Lenders' loan documents, the Lenders' loans, and/or the Lenders' security interests in or liens on the Prepetition Collateral. If no such action, objection or other challenge is commenced through an adversary proceeding by the Debtor or such other party in interest within the Challenge Period, then the pre-petition indebtedness owing to the Lenders under their respective loan documents will be deemed and adjudicated by this Order finally and indefeasibly as valid and enforceable, and the liens and security interests of the Lenders in the Prepetition Collateral will be deemed and adjudicated finally as valid, enforceable, unavoidable, and perfected. By agreeing to the terms of this Order, the Lenders do not, except as provided in this Order, waive any of their rights and remedies under their respective loan documents or applicable law, including those rights set forth in the Bankruptcy Code.

12. Nothing in this Order will be deemed or construed as an admission or waiver by the Lenders as to adequate protection, or any other issue in the Debtor's bankruptcy case, and this Order will not constitute consent by the Lenders to the use of the cash collateral other than for the limited purpose and during the limited period expressly provided herein. In addition, nothing contained in this Order will prejudice the rights of the Lenders to: (i) withdraw their consent to the Debtor's use of cash collateral and seek to obtain the Court's order prohibiting use of cash collateral after the Termination Date; (ii) seek relief from the automatic stay of section 362(a) of the Bankruptcy Code; (iii) oppose the sale or disposition of any asset pursuant to section 363 of the Bankruptcy Code; (iv) oppose confirmation of any plan of reorganization filed by the Debtor or any other party in interest; (v) seek a dismissal of the Debtor's bankruptcy case pursuant to section 1112 of the Bankruptcy Code; (vi) seek allowance of additional adequate protection in connection with the use of the Lenders' cash collateral; (vii) seek to convert the Debtor's bankruptcy case to a case under chapter 7 of the Bankruptcy Code pursuant to section 1112 of the Bankruptcy Code; (viii) seek the appointment of a chapter 11 trustee pursuant to section 1104 of the Bankruptcy Code; or (ix) seek any other relief that the Lenders may deem necessary and appropriate under the circumstances.

Dated: September ___, 2012    **ENTER:**

_____
United States Bankruptcy Judge

**AGREED TO:**

| **MS MARK SHALE, LLC** | **MS FINCO, LLC, JOB INVESTMENTS, LLC, SCOTT BASKIN, AND HAROLD W. SULLIVAN** |
|---|---|
| By: _____<br>One of its attorneys | By: _____<br>One of their attorneys |
| Steven B. Towbin (#2848546)<br>Peter J. Roberts (#2848546)<br>Shaw Gussis Fishman Glantz<br>  Wolfson & Towbin LLC<br>321 North Clark Street, Suite 800<br>Chicago, Illinois 60654<br>(312) 541-0151  telephone<br>(312) 980-3888  facsimile<br>stowbin@shawgussis.com<br>proberts@shawgussis.com | Jerry L. Switzer, Jr. (#6210229)<br>POLSINELLI SHUGHART PC<br>161 N. Clark St., Ste. 4200<br>Chicago, Illinois 60601<br>(312) 819-1900 telephone<br>(312) 819-1910 facsimile<br>jswitzer@polsinelli.com |

Document comparison by Workshare Professional on Monday, September 10, 2012 3:00:30 PM

| Input: | |
|---|---|
| Document 1 ID | file://F:\DOCS\pjr\10387-001\ORD\~VER\3\A0326542.DOC |
| Description | A0326542 |
| Document 2 ID | file://F:\DOCS\pjr\10387-001\ORD\A0326542.DOC |
| Description | A0326542 |
| Rendering set | standard |

| Legend: |
|---|
| Insertion |
| Deletion |
| Moved from |
| Moved to |
| Style change |
| Format change |
| Moved deletion |
| Inserted cell |
| Deleted cell |
| Moved cell |
| Split/Merged cell |
| Padding cell |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 4 |
| Deletions | 2 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 6 |

{  WSComparison_A0326542-A0326542.doc}